**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 26-31092 (JPN)** |
| **ARTELLA SOLUTIONS, INC.,**[1] | § | **(CHAPTER 11)** |
| | § | **(Subchapter V)** |
| | § | |
| | § | |
| **DEBTOR.** | § | |
| | § | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | § | ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ |
| | § | |
| **SEPAND MOSHIRI,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 26-_____** |
| | § | |
| **ARTELLA SOLUTIONS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**ORIGINAL COMPLAINT TO DETERMINE DISCHARGEABILITY**
**OF DEBT PURSUANT TO 11 U.S.C. § 523**

Sepand Moshiri ("Moshiri"), a creditor and holder of unsecured claims against Artella

Solutions, Inc. ("Artella" or the "Debtor") in the above-captioned bankruptcy case (the "Main

Bankruptcy Case"), files this Original Complaint to Determine Dischargeability of Debt Pursuant

to 11 U.S.C. § 523 (the "Complaint") against Artella, the defendant listed herein (the

"Defendant").  In support thereof, Moshiri respectfully states as follows:

**I.      SUMMARY OF COMPLAINT**[2]

1.      Moshiri co-founded the Debtor in 2018.  Additionally, from October 2021 until

December 2025, Moshiri served as President and CEO of the Debtor.  During his time as an

---

[1] EIN: xx-xxx8656.

[2] Certain undefined capitalized terms appearing in the Summary of Complaint are defined later in the Complaint.  Also, all references herein to the "Bankruptcy Code" shall mean title 11 of the U.S. Code.  Additionally, all references to the "Main Bankruptcy Case" shall refer to the above-captioned case pending before in this Court under Case No. 26-31092 (JPN).

officer of the Debtor, the company intermittently experienced liquidity shortfalls.  Given Moshiri's personal stake in the Debtor and role as an officer, Moshiri felt compelled to ensure the Debtor's financial wherewithal.  As such, with the knowledge of the Debtor's Board of Directors and management, Moshiri periodically advanced his personal funds to the Debtor in order to avoid significant financial disruptions to the Debtor's operations.  With the Board of Director's oversight, the course of dealing between the Debtor and Moshiri was such that any funds advanced by Moshiri were to be booked as a short-term loan(s) to the Debtor, bearing no interest, and repaid with revenues collected from the subsequent collection cycle.

2.      In accordance with prior practice, Moshiri advanced $50,000.00 in personal funds to the Debtor in the form of a Loan on or about December 11, 2025, the proceeds of which the Debtor accepted and used to satisfy certain expenses and payroll shortfalls anticipated in December 2025 due to collection delays and lack of fresh capital.  The Debtor, however, refused to book the Loan as a liability owed by the company and refused to repay Moshiri prior to the Petition Date.  The Debtor also failed to include the Loan as a liability on its Schedules.  The Debtor intentionally misled Moshiri to believe that it would repay the Loan when it instead intended to terminate him from his positions, which it ultimately did as of December 15, 2025, while retaining the funds he advanced, refusing to return the same, or acknowledge the indebtedness on account of the Loan.

3.      In this way, the Debtor's fraudulent representations caused damages to Moshiri in the amount of no less than approximately $50,000.00 consisting of, without limitation, the amount of the Loan advanced to the Debtor.  The Debtor's and Board of Directors' actions are the subject of a civil action pending in the matter styled: *Sepand Moshiri v. CorMedica Group, Inc.,*

*et al.*, currently pending under Cause No.202614278 in the 11th Judicial District Court of Harris County, Texas (the "Litigation Action").

## II.     JURISDICTION, CONSENT TO ENTRY OF JUDGMENT, AND VENUE

4.     This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and General Order 2012-6 of the United States District Court for the Southern District of Texas.  The matters set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O).

5.     The statutory predicates for the relief requested herein are Sections 523(a) and (c) and 1192(2) of the Bankruptcy Code and Rule 7001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

6.     Pursuant to Bankruptcy Rule 7008, Moshiri consents to the entry of final orders or a judgment by the bankruptcy judge in this adversary proceeding.

7.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.     PARTIES

8.     Moshiri is an individual whose primary address is 1306 Westwick Forest Lane, Houston, Texas 77043.  Moshiri may be served at his principal address above or through his counsel of record in the Main Bankruptcy Case: Winstead PC, Attn: Sean B. Davis, 600 Travis Street, Suite 5200, Houston, Texas 77002.

9.     Defendant Artella Solutions, Inc. is a corporation formed under the laws of the state of Texas with its principal offices located at 710 N. Post Oak Road, Suite 510, Houston, Texas 77024.  Artella may be served at its principal address above or through its counsel of record in the Main Bankruptcy Case: Haselden Farrow PLLC, Attn: Melissa Haselden, 708 Main Street, 10th Floor, Houston, Texas 77002.

### IV.    FACTUAL ALLEGATIONS

10.    On February 19, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code initiating the above-captioned Main Bankruptcy Case.   The Debtor remains in possession, operation, and management of its business and property as a debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

11.    Prior to the Petition Date, in September 2018, Moshiri co-founded the Debtor and subsequently re-assumed the positions of President and CEO on or about October 18, 2021, at the request of the Debtor's Board of Directors (the "Board of Directors").   On October 5, 2022, Moshiri entered into a written employment agreement with the Debtor which set forth Moshiri's title, salary, and compensation terms, including an initial $50,000 signing bonus retroactive to October 2021, and an additional $50,000 bonus tied to 2023 performance, which was to be issued in accordance with a subsequent amendment.   Both amounts remain unpaid.

12.    As part of his executive role, and with the knowledge of the Board of Directors, Moshiri periodically advanced short-term personal funds to the Debtor and its corporate parent and sole shareholder, CorMedica Group, Inc. ("CorMedica"), to cover payroll and operational expenses during temporary liquidity shortfalls. These advances were customary, documented as short-term loans, bore no interest, and were repaid within weeks once accounts receivable were collected.   On or about December 11, 2025, Moshiri provided the Debtor with a $50,000.00 short-term loan bearing no contractual interest (the "Loan") to fund payroll and operational expenses, including anticipated increased payroll during the winter holiday period.[3]   At the time the Loan was made, the Debtor's management agreed that the Loan would be repaid promptly

---

[3] A true and correct copy of a cashier's check from Moshiri to the Debtor in the amount of $50,000.00, dated December 11, 2025, evidencing funds advanced on account of the Loan, is attached hereto as **Exhibit A** and incorporated herein for all purposes.

upon receipt of incoming collections, consistent with prior similar advances made by Moshiri.[4] The Chair of the Board of Directors, Leo Womack, was also aware of this arrangement. The Debtor accepted the proceeds of the Loan and used the funds for its operations.

13.     On December 15, 2025, only four (4) days after Moshiri made the Loan to the Debtor, the Board of Directors and CorMedica terminated Moshiri from his role as President and CEO.  That same day, the Board of Directors appointed Casey McNeil ("McNeil") as CEO of the Debtor; McNeil was previously appointed to the Board of Directors in November 2025.  McNeil is also the CEO of Vendera, Inc. ("Vendera"), which is the Debtor's primary vendor that manages all wireless lines, device configurations, inventory management, and order logistics for its patient monitoring orders.  In this capacity, Vendera is also one of the Debtor's largest creditors. McNeil is also the principal and majority owner of Pulse Layer, Inc. ("Pulse Layer"), which is the DIP lender and sponsor of the Debtor's putative plan whereby Pulse Layer seeks to either serve as stalking horse bidder in the Debtor's sale of the company, or to acquire Vendera's claims, convert its cumulative debt to equity, and acquire up to ninety-five percent (95%) control of the Debtor.[5]

14.     On information and belief, prior to the origination of the Loan, notwithstanding Moshiri's efforts to secure new financing or investment, the Board of Directors, in concert with certain holders of significant shares of CorMedica, intended to install McNeil as CEO in order to pursue alternative avenues and sources for debt or equity financing and to assuage the alleged concerns of certain creditors (including, on information and belief, Vendera) regarding the

---

[4] *See* December 24, 2025 E-mail from Linda Nelson, Debtor's Vice President of Revenue Cycle Operations, to Heather Monk, Debtor's CFO, and Leo Womack, Chair of the Board of Directors (the "Nelson E-mail").  A true and correct copy of the Nelson E-mail is attached hereto as **Exhibit B** and incorporated herein for all purposes.

[5] *See Emergency Motion (I) to Incur Post-Petition Indebtedness under 11 U.S.C. §§ 363, 364(c) & (d), and 105, (II) Request for Preliminary Hearing Before March 19, 2026 and (III) Request for Final Hearing* (Main Bankruptcy Case, Docket No. 50) (the "DIP Motion"), at Exhibit A.

Debtor's financial condition.[6]  On information and belief, prior to McNeil's installation as CEO of the Debtor and appointment to the Board of Directors, Vendera and Flipside Media, Inc. ("Flipside"), another of the Debtor's major vendors, took deliberate action to undermine Moshiri's ability to source critical financing for the Debtor.  To wit, Vendera threatened the immediate shutdown of critical telecommunications and logistics infrastructure,[7] while Flipside disingenuously negotiated the restructuring of its contract with the Debtor that would have significantly alleviated the financial strain the Debtor was experiencing through a negotiated sale of the intellectual property that was co-developed with the Debtor in conjunction with the issuance of new equity and the execution of a new consulting agreement.

15.     These actions were intentionally designed to destabilize the company and place direct pressure on Moshiri, undermine his credibility with investors and counterparties, and impair his ability to secure financing or strategic alternatives.  In furtherance of these aims, but unbeknownst to Moshiri at the time, the Debtor and CorMedica intended to terminate Moshiri prior to or substantially contemporaneously with his making the Loan to the company.  Yet, despite having formed the intent to terminate Moshiri, the Debtor nevertheless accepted and used the Loan proceeds with no intent to acknowledge or repay the indebtedness.  On January 8, 2026, Moshiri contacted Heather Monk and requested repayment of the Loan, but the Debtor failed to respond to his request.[8]  Moshiri never received any re-payment on account of the Loan.

16.     On February 26, 2026, Moshiri filed the Litigation Action.

17.     On March 14, 2026, the Debtor filed the DIP Motion.

---

[6] *See* December 15, 2025 E-mail from Leo Womack, Chair of the Board of Directors (the "Womack E-mail").  A true and correct copy of the Womack E-mail is attached hereto as **Exhibit C** and incorporated herein for all purposes.

[7] *See* July 21, 2025 Letter from Vendera to the Debtor (the "Vendera Letter").  A true and correct copy of the Vendera Letter is attached hereto as **Exhibit D** and incorporated herein for all purposes.

[8] *See* January 8, 2026 E-mail from Moshiri to Heather Monk (the "Moshiri E-mail").  A true and correct copy of the Moshiri E-mail is attached hereto as **Exhibit E** and incorporated herein for all purposes.

18.     On March 18, 2026, Moshiri filed his *Objection* [Docket No. 59] to the DIP Motion.

19.     On March 23, 2026, the Debtor filed its Schedules of Assets and Liabilities [Docket No. 73] (the "Schedules") which does not reflect the Loan as a liability of the Debtor.

20.     On March 24, 2026, the Court entered the *Interim Order Authorizing Debtor to Incur Post-Petition Indebtedness under 11 U.S.C. §§ 363, 364(c) & (d), and 105, and Setting Final Hearing* [Docket No. 79].

21.     On May 1, 2026, the Court entered its *Stipulation and Agreed Order* [Docket No. 112] authorizing Moshiri, the Debtor, and Pulse Layer, among others, to mediate with U.S. Bankruptcy Judge Marvin Isgur.  Mediation is currently set for May 27, 2026.

22.     On May 11, 2026, the Court entered its *Second Interim Order Authorizing Debtor to Incur Post-Petition Indebtedness under 11 U.S.C. §§ 363, 364(c) & (d), and 105, and Setting Final Hearing* [Docket No. 120], which scheduled a final hearing on the DIP Motion on June 5, 2026.

23.     On May 20, 2026, the Debtor filed its *Plan of Liquidation Under Subchapter V of the Bankruptcy Code* [Docket No. 130] (the "Plan"), which calls for the sale of substantially all of the Debtor's assets with Pulse Layer to serve as stalking horse bidder.

24.     Also on May 21, 2026, the Court entered its *Order Fixing Time to File Objections to Confirmation of Plan; and Fixing Time for Hearing on Confirmation of Sub V Plan* [Docket No. 131] (the "Confirmation Scheduling Order").  The Confirmation Scheduling Order set a hearing to consider confirmation of the Plan on June 26, 2026.

25.     Also, on May 21, 2026, the Debtor filed its *Amended Plan of Liquidation Under Subchapter V of the Bankruptcy Code* [Docket No. 135] (the "Amended Plan").

26.     On May 22, 2026, the Debtor filed its *Emergency Motion to Continue Hearing on Confirmation* [Docket No. 137], which sought a hearing to consider confirmation of the Amended Plan on or about July 20, 2026 to coincide with the putative sale of the Debtor's assets.

27.     Also on May 22, 2026, the Court entered its *Order Setting Status Conference* [Docket 139], wherein the Court set a status conference hearing on June 5, 2026 to address concerns regarding the adequacy of disclosures regarding the mechanics of the Amended Plan, the proposed sale of the Debtor's assets, and the Debtor's qualifications to be a Subchapter V debtor.

## V.     CAUSES OF ACTION

28.     Under the Bankruptcy Code, not every debtor is afforded a fresh start—only the honest and unfortunate debtor.[9]  The Bankruptcy Code excepts certain debts from discharge in Section 523(a) of the Bankruptcy Code.

**COUNT I – EXCEPTION TO DISCHARGE UNDER BANKRUPTCY CODE SECTION 523(A)(2)(A) FOR DEBTS OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS AND/OR ACTUAL FRAUD**

29.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

30.     Section 523(a)(2)(A) of the Bankruptcy Code creates a rule of nondischargeability for any debt for money, property or services, or extension, renewal of credit, to the extent obtained by "false pretenses, a false representation, or actual fraud."[10]  The purpose of excepting debts from discharge caused by false representations, false pretenses, or fraud is to prevent debtors from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not benefit dishonest debtors. Consequently, debts

---

[9] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[10] 11 U.S.C. § 523(a)(2)(A).

resulting from money or property that has been obtained by false pretenses, false representations or by means of actual fraud are not dischargeable.[11]

31.     Under Fifth Circuit precedent, the analysis courts engage in to determine whether a creditor's claim should be exempted from discharge due to the debtor's having made false representations differs slightly from the actual fraud analysis.[12]   In the case at bar, Moshiri's claim in connection with the Loan is entitled to the exception to discharge under either the false representation or the actual fraud analysis.  Under the actual fraud analysis, a *prima facie* case of fraud exists if: (i) the Debtor or any of its agents made a materially false representation to Moshiri; (ii) at the time of the representation, the Debtor or any of its agents knew such statement to be false; (iii) the Debtor or any of its agents made the representation with the intent and purpose of deceiving Moshiri; (iv) Moshiri justifiably relied on the representation; and, (v) Moshiri sustained a loss or damage as the proximate consequence of this representation having been made.[13]

32.     The Debtor defrauded Moshiri.  The Debtor, with the knowledge of the Board of Directors, permitted Moshiri to extend the Loan to the Debtor and authorized the Debtor's use of the Loan proceeds while simultaneously planning to terminate Moshiri from his positions as CEO and President of the Debtor.  Indeed, on information and belief, the Board of Directors, which directs the Debtor, and to which the Debtor's actions are attributable, intended to install McNeil as CEO of the Debtor prior to Moshiri's extending the Loan to the Debtor.

33.     On further information and belief, prior to McNeil's installation as CEO of the Debtor in December 2025 and appointment to the Board of Directors in November 2025,

---

[11] *Smith v. Cunningham* (*In re Cunningham*), 163 B.R. 657, 660 (Bankr. D. Mass. 1994).

[12] *Bank of La. v. Bercier* (*In re Bercier*), 934 F.2d 689, 692 (5th Cir. 1991).

[13] *See Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

Vendera and Flipside took deliberate action to undermine Moshiri's ability to source critical financing for the Debtor. For example, Vendera threatened the immediate shutdown of critical telecommunications and logistics infrastructure, while Flipside disingenuously negotiated the restructuring of its contract with the Debtor.[14] These actions were intentionally designed to destabilize the company and place direct pressure on Moshiri, undermine his credibility with investors and counterparties, and impair his ability to secure financing or strategic alternatives. With this background in place, and despite having formed the intent to terminate Moshiri, the Debtor nevertheless accepted and used the Loan proceeds with no intent to acknowledge or repay the indebtedness.

34. Moshiri justifiably relied on his prior history and the ordinary course of his dealings with the Debtor and reasonably expected that the Loan would be acknowledged and repaid by the Debtor as similar loans had been in the past. As a direct result of the Debtor's representations, Moshiri suffered damages, including, but not limited to, loss of use of the funds which constituted the Loan proceeds, and difficulties in satisfying personal obligations due to a substantial unpaid indebtedness owed to him. As such, the Debtor is not entitled to discharge the indebtedness owed to Moshiri under the actual fraud analysis of Section 523(a)(2)(A) of the Bankruptcy Code.

35. The false representation analysis also prohibits the Debtor from receiving a discharge of its debt to Moshiri. A debtor's representations are considered false for purposes of Section 523(a)(2)(A) of the Bankruptcy Code if: (i) the debtor states a falsehood; (ii) describing past or current facts; (iii) that [was] relied upon by the other party.[15] The elements for false representation are the same as those required for actual fraud under Section 523(a)(2)(A) of the

---

[14] *See supra* note 6.

[15] *Allison v. Roberts* (*In re Allison*), 960 F.2d 481, 483-85 (5th Cir. 1995).

Bankruptcy Code, but false representation does not require a showing of the Debtor's intent to deceive Moshiri.  Accordingly, based on the foregoing analysis, in the event this Court finds that the element of intent is not sufficiently established, Moshiri's claim is still entitled to an exception to discharge under the false representation analysis of Section 523(a)(2)(A) of the Bankruptcy Code.

**COUNT II – EXCEPTION TO DISCHARGE UNDER BANKRUPTCY CODE SECTION 523(A)(4) FOR FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY, EMBEZZLEMENT OR LARCENY**

36.    The foregoing paragraphs are hereby incorporated as if fully set forth herein.

37.    Section 523(a)(4) of the Bankruptcy Code excepts debts from discharge if they arose from a debtor's acts of fraud or defalcation while acting in a fiduciary capacity.[16]  Because the Debtor was presumptively insolvent during the three (3) months immediately prior to the Petition Date, the Debtor owed fiduciary duties to all of its creditors and equity holders during that time.  As a shareholder of CorMedica, and a significant creditor of the Debtor, the Debtor's fiduciary obligations extended to Moshiri as well.[17]  Insofar as the Debtor was insolvent during the period when the Loan was made, the Debtor breached its fiduciary duties owed to Moshiri by fraudulently inducing Moshiri to make the loan and/or misrepresenting its intentions to repay the Loan.  As a result, Moshiri is entitled to have the indebtedness owed by the Debtor excepted from discharge pursuant to Section 523(a)(4) of the Bankruptcy Code.

38.    Furthermore, Moshiri's claim is also eligible to be excepted from discharge because the Debtor obtained the money through larceny.[18]  Artella unlawfully accepted Moshiri's money with the intent of permanently depriving Moshiri of it and failing to repay the

---

[16] 11 U.S.C. § 523(a)(4).

[17] *See, e.g.*, *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 534 & n.24 (5th Cir. 2004) (citing *Weaver v. Kellogg*, 216 B.R. 563, 583-84 (S.D. Tex. 1997)); *see also Jewel Recovery, L.P. v. Gordon* (*In re Zale Corp.*), 196 B.R. 348, 355 (N.D. Tex. 1996).

[18] *See* 11 U.S.C. § 523(a)(4).

indebtedness pursuant to ordinary practices or upon request. The Debtor accepted the Loan proceeds with the intent to terminate Moshiri from his positions as President and CEO. Yet, Moshiri extended the Loan to the Debtor based on the understanding that he would continue to direct and guide the Debtor's business operations. Moshiri likely would have never agreed to extend the Loan pursuant to terms that were customary during his tenure as President and CEO if he had known that his role was to be immediately terminated and he would have no voice in how the funds were expended or the future direction of the company.

39. Indeed, the conditions and terms of any financing would likely have been far more robust and favorable to Moshiri had he known his termination was imminent. As such, the Loan was procured under false pretenses and the proceeds thereof were used for purposes and under circumstances which Moshiri did not contemplate and to which he did not agree. Moshiri is therefore entitled to have the indebtedness owed by the Debtor excepted from discharge.

**COUNT III – EXCEPTION TO DISCHARGE UNDER BANKRUPTCY CODE SECTION 523(A)(6) FOR WILLFUL AND MALICIOUS INJURY BY THE DEBTOR TO ANOTHER ENTITY OR TO THE PROPERTY OF ANOTHER ENTITY**

40. The foregoing paragraphs are hereby incorporated as if fully set forth herein.

41. Section 523(a)(6) of the Bankruptcy Code excepts debts from discharge if they arose from a debtor's willful and malicious injury to another entity or the property of another entity.[19] As outlined above, Debtor intended to and did permanently deprive Moshiri of use of his money through fraud, false representation, and/or false pretenses as the Debtor received the Loan proceeds with the intent to terminate Moshiri from his positions with the Debtor. Yet, Moshiri's extension of the Loan was predicated on his being the CEO and President of the Debtor and continuing to direct its business operations and the deployment of its resources. The

---

[19] 11 U.S.C. § 523(a)(6).

Debtor's termination of Moshiri, use of the Loan proceeds, and refusal to acknowledge or repay the indebtedness in connection with the Loan has caused Moshiri to suffer damages, including, but not limited to, loss of use of the funds which constituted the Loan proceeds, and difficulties in satisfying personal obligations due to a substantial unpaid indebtedness owed to him. Accordingly, Moshiri is entitled to have the indebtedness owed by the Debtors excepted from discharge pursuant to Section 523(a)(6) of the Bankruptcy Code.

## VI.    PRAYER

Moshiri respectfully requests that this matter be set for trial, and that, after final hearing, judgment be entered against Defendant and in favor of Moshiri for the following relief:

(1)    determining that Moshiri's indebtedness in connection with the Loan is not subject to discharge pursuant to Section 523 of the Bankruptcy Code;

(2)    reasonable and necessary costs and fees incurred with respect to this action;

(3)    pre-judgment interest and post-judgment interest, at the highest rate allowed by law; and,

(4)    such other relief to which Moshiri may be justly entitled, both at law and in equity.


**DATED: May 22, 2026.**


[*The remainder of this page has been intentionally left blank*]

Respectfully submitted,

**WINSTEAD PC**

By: _____/s/ Sean B. Davis_____

Sean B. Davis
Texas Bar No. 24069583
S.D. Tex. No. 1048341
Tom Van Arsdel
Texas Bar No. 24008196
Ciara Perritano
Texas Bar No. 24096440
600 Travis Street, Suite 5200
Houston, Texas 77002
(713) 650-8400 (Telephone)
(713) 650-2400 (Facsimile)
E-mail: sbdavis@winstead.com
E-mail: tvanarsdel@winstead.com
E-mail: cperritano@winstead.com

**ATTORNEYS FOR SEPAND MOSHIRI**

4009-0014-7665v.1 46387-1 27/19/2025
4929-5488-6827v.5 73220-1 5/22/2026